UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

BONZELLE NIMMONS

                Petitioner,

v.

WARDEN

                Respondent.

**MEMORANDUM AND ORDER**

21-cv-05169 (LDH)

---

LaSHANN DeARCY HALL, United States District Judge:

Bonzelle Nimmons ("Petitioner"), proceeding pro se, brings the instant petition under 28 U.S.C. § 2241 for writ of habeas corpus challenging, on due process grounds, the disciplinary actions to which he was subjected following a February 20, 2019 disciplinary hearing. (Pet. Writ of Hab. Corp. ("Pet."), ECF. No. 8.)

## BACKGROUND

On March 22, 2019, Petitioner pleaded guilty to Count Three of a Third Superseding Indictment, which charged him with conspiracy to distribute and possession with the intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(b)(1)(B)(viii), and 841(b)(1)(C). (*See* Minute Entry, dated March 22, 2019, *United States v. Nimmons*, No. 17-cr-00164 (E.D.N.Y.), ECF No. 151; Judgment at ECF pg. 1, *United States v. Nimmons*, No. 17-cr-00164 (E.D.N.Y.), ECF No. 252.) Petitioner was sentenced to 78 months imprisonment followed by four years of supervised release on May 28, 2021. (Judgment at ECF pgs. 2-3, *United States v. Nimmons*, No. 17-cr-00164 (E.D.N.Y.), ECF No. 252.) As is relevant here, Petitioner challenges certain events that occurred in February 2019 at the Metropolitan

1

Detention Center in Brooklyn, New York ("MDC Brooklyn"), prior to him being sentenced. (*See generally* Pet.)

On February 13, 2019, the property located in Petitioner's holding cell was inventoried as a result of him being sent to the Special Housing Unit for a "100 series infraction."[1] (Pet. at 2.) During the inventory, the reporting officer found and opened a sealed box containing numerous orange strips with the marking "NB." (*See* Warden's Opp'n. Pet'r's Pet. ("Warden's Opp'n"), Ex. A at 7, ECF No. 11-1.) The officer then contacted the Operations Lieutenant and determined the strips should be sent for testing. (*Id.*) The strips were ultimately identified by an MDC pharmacist as Suboxone, a narcotic. (*Id.* at 13.) According to an internal memorandum, MDC Brooklyn—the facility in which Petitioner was being held— "does not prescribe, nor does its pharmacy stock" Suboxone. (*Id.*) On February 14, 2019, Petitioner was served with an Incident Report informing Petitioner that he was being charged with possession of narcotics in violation of Code 113 and that a disciplinary hearing related to this charge would be held on February 20, 2019 before a Discipline Hearing Officer ("DHO"). (*See* Pet. at 2; *see* Warden's Opp'n, Ex. A at 7-8).

On February 18, 2019, Petitioner executed an "Inmate Rights at Discipline Hearing" form acknowledging his rights, among others, to: (1) have a written copy of the charges against him; (2) have full-time representation before the DHO; (3) provide witness testimony and documentary evidence on his behalf; and (4) appeal the decision of the DHO. (*Id.* at 11.) Ultimately, Petitioner indicated he neither wished to have representation before the DHO nor provide any witness testimony on his behalf. (*Id.* at 12.)

---

[1] For the avoidance of doubt, this "100 series infraction" is not the subject of Petitioner's instant petition.

During the February 20 hearing, Petitioner denied the findings in the Incident Report, stating, "I am not guilty, the drugs were not mine," but did not submit any evidence in support of this contention. (*Id.* at 2.) Following the hearing, the DHO concluded that Petitioner was liable for possession of narcotics as charged. (*Id.* at 3-4.) The DHO memorialized this conclusion in a DHO report, which explained the DHO's consideration of the relevant evidence, including Petitioner's testimony. (*Id.* at 4.) The DHO also highlighted that Petitioner was "unable to provide the DHO with any significant/credible eyewitnesses or significant/credible evidence [sic] to corroborate [Petitioner's] claim [that] the MDC Brooklyn staff w[as] not being truthful." (*Id.*) Ultimately, Petitioner was sanctioned with the following: loss of 41-days of good conduct time, disciplinary segregation for up to 60 days; and loss of visitation privileges for one year. (*Id.* at 5.) On September 14, 2021, Petitioner filed the instant petition claiming his loss of 41 days of good time credit violated his right to due process under the United States Constitution. (Pet. at 7-9.)

## STANDARD OF REVIEW

Under 28 U.S.C. § 2241, an application for a writ of habeas corpus is available "to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir .2001) (citing *Chambers v. United States*, 106 F.3d 472, 474-75 (2d Cir. 1997) and *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n.5 (2d Cir. 1991)). A petitioner is required to show that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Matters that may be challenged pursuant to § 2241 include "the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention[,] and prison conditions." *Levine v.*

*Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir.2001)).

"When a habeas petitioner proceeds pro se, the court holds the petition to less rigorous standards than it holds filings by counseled parties." *Mejia v. Elmira Correctional Facility*, 702 F.Supp.3d 83, 93 (E.D.N.Y. 2023). That is, "[c]ourts must liberally construe a pro se petition to raise the strongest arguments it suggests." *Id*. However, "the significant procedural leniency that courts afford pro se petitioners does not extend to excusing a pro se petitioner's failure to meet the statutory requirements." *Cosey v. Lilley*, 460 F. Supp. 3d 346, 366-367 (S.D.N.Y. 2020), *aff'd*, 62 F.4th 74 (2d Cir. 2023). Put differently, pro se status "does not exempt a pro se party from compliance with the relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

## DISCUSSION

### I. Failure to Exhaust Administrative Remedies

A prisoner may file a petition under 28 U.S.C. § 2241 to challenge the manner in which his sentence is being executed, which includes the loss of good time credits and other disciplinary sanctions. *Carmona*, 243 F.3d at 632. Generally, however, federal inmates must exhaust their administrative remedies before filing a petition for habeas corpus relief in federal court. *Id.* at 634. That is, "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (internal quotations and citation omitted). The purpose of this exhaustion requirement includes "protecting the authority of administrative agencies, limiting interference in agency affairs, and promoting judicial efficiency by resolving potential issues and developing the factual record." *Id.*

4

An inmate seeking a formal review of any aspect of an issue relating to their confinement may do so using the remedies provided by the Administrative Remedy Program ("ARP") established by the Federal Bureau of Prisons ("BOP"). 28 C.F.R. § 542.10(a). The ARP provides a four-step process for an inmate challenging their conditions of confinement: (1) an informal resolution with prison staff, 28 C.F.R. § 542.13; (2) an initial filing of a formal written request through a BP-9 form, 28 C.F.R. § 542.14; (3) an appeal to the appropriate Regional Director through a BP-10 form [("B-10 appeal")], 28 C.F.R. § 542.15; and (4) an appeal to the General Counsel through a BP-11 form [("B-11 appeal")], *id*. An inmate is required to submit a B-10 appeal within 20 calendar days of the Warden's response. 28 C.F.R. § 542.15(a). And, the timeline for submitting a B-11 appeal to the General Counsel is within 30 calendar days from the Reginal Director's response. *Id.*

A court may, however, excuse a petitioner's failure to exhaust these administrative remedies under certain circumstances. *Beharry*, 329 F.3d at 62. Specifically, "[e]xhaustion of administrative remedies may not be required where: (1) available remedies provide no 'genuine opportunity for adequate relief'; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be 'futile'; and (4) in certain instances a [petitioner] has raised a 'substantial constitutional question.'" *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 741 (2d Cir. 1992) (internal citations omitted); *see also Beharry*, 329 F.3d at 62 (holding the same). As is relevant here, it is Petitioner's burden to establish that excusal of the exhaustion requirement is warranted. *Owusu-Sakyi v. Terrell*, No. 10-CV-507 KAM, 2010 WL 3154833, at *3 (E.D.N.Y. Aug. 9, 2010) ("Failure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the petitioner persuades the court that the failure to exhaust should be excused." (citing *Carmona*, 243 F.3d at 634)).

5

Here, Petitioner contends he filed a BP-10 appeal but was purportedly told that this appeal was lost or otherwise misplaced during the pandemic. (Pet. at 7.) Notwithstanding this contention, the exhibits attached to Petitioner's since-withdrawn-petition tell a different story.[2] As the Government points out, Petitioner filed—and the Regional Director received— Petitioner's BP-10 appeal on three separate occasions, but each were rejected for various technical deficiencies. (*See* Pet'r's Pet., Exs. ("Pet. Exs.") at ECF Pgs. 27, 29, 31, 33, 35, 37, 39, 41, ECF No. 1-2.) And, there is no evidence that Petitioner successfully resubmitted a BP-10 appeal rectifying the identified deficiencies. Petitioner also contends that he filed a BP-11 appeal but it never got to its destination, was destroyed, or was somehow intercepted. (Pet. at 7.) Yet, Petitioner fails to provide any evidence of him initially filing a BP-11 appeal or attempting to refile a BP-11 appeal. (*See generally* Pet. Exs.)

Against this backdrop, Petitioner argues he "should not have to endure anymore shenanigans, and this Court should proceed to the merits" of his petition. (Pet. at 7.) In other words, Petitioner claims he should be excused from exhausting his administrative remedies. In response, the Government argues "the Court should not permit [Petitioner] to circumvent the administrative process based on . . . unsupported assertions." (*Id.*) That is, the Government contends the Court should deny the petition because Petitioner failed to provide any facts or evidence that militate in favor of excusing Petitioner's failure to exhaust his administrative remedies. The Court agrees with the Government.

Construing the pro se petition liberally, Petitioner contends his failure to exhaust administrative remedies should be excused for three reasons: (1) there is unreasonable delay in

---

[2] Although not attached to the operative petition in this case, Petitioner references exhibits that were attached to Petitioner's previously withdrawn petition. (*See* Pet. Writ. of Hab. Corp., Exs., ECF No. 1-2.) In light of Petitioner's pro se status, the Court construes Petitioner's operative petition (*see* Pet.), as incorporating by reference those exhibits attached to his since-withdrawn-petition. (*See* Pet. Writ. of Hab. Corp., Exs.)

6

all aspects of the ARP process; (2) his prior attempts to exhaust were purportedly impeded; and (3) exhaustion would be futile. (Pet. 2-7.) With respect to Petitioner's first argument, "[n]ot every delay will be sufficiently severe" to justify excusing exhaustion. *Washington v. Barr*, 925 F.3d 109, 119 (2d Cir. 2019). Excusal of the exhaustion requirement on the grounds of undue delay requires a "'strong showing both of the inadequacy of the prescribed procedure and of impending harm.'" *Washington*, 925 F.3d at 119 (alteration omitted) (quoting *Aircraft & Diesel Equip. Corp. v. Hirsch*, 331 U.S. 752, 773-74 (1947)). Here, Petitioner's first argument must be rejected because he has failed to show that any delay occurred with respect to his administrative appeals, much less a strong showing of inadequacy of the ARP process. As noted, Petitioner's exhibits indicate that each of his BP-10 appeals were responded to, and there is no evidence of Petitioner ever filing a BP-11 appeal. (Pet. Exs. at 27, 29, 31, 33, 35, 37, 39, 41; *see generally* Pet. Exs.) Accordingly, the Court rejects Petitioner's first argument as insufficient for excusal of the exhaustion requirement.

  Turning to Petitioner's second argument, he claims his prior attempts to exhaust his administrative remedies were impeded by virtue of his appeals not being delivered to their intended destination or being destroyed or somehow intercepted. (Pet. at 7.) As a threshold matter, a conclusory claim that a grievance was lost or ignored is insufficient to overcome exhaustion requirements. *Cruz v. DeMarco*, No. 12-CV-4277 JFB GRB, 2013 WL 4719086, at *7-8 (E.D.N.Y. Sept. 3, 2013) (collecting cases). Here, Petitioner's second argument must fail because he provides no evidence or facts in support of his appeals either not being delivered or being misplaced or destroyed. (*See generally* Pet.; Pet. Exs.) Moreover, even if this argument was grounded in truth, it would still fail because Petitioner did not provide evidence that he took any action once he did not receive a response to his appeals. *Cruz*, No. 12-CV-4277 JFB GRB,

7

2013 WL 4719086, at *7-8 (rejecting plaintiff's arguments where he did "not assert, or even attempt to demonstrate, that he followed up with prison officials or took any action once he did not receive a written response"); *see also Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) ("An inmate seeking to be relieved from technically exhausting his administrative remedies must allege facts showing that he made reasonable attempts to exhaust his remedies."), *aff'd*, 178 F. App'x 39 (2d Cir. 2006).  Indeed, nowhere in his petition does Petitioner describe any actions he took after his appeals purportedly failed to be delivered or were misplaced or destroyed.  (*See generally* Pet.)[3]  Petitioner's second argument is rejected.

With respect to Petitioner's third argument, futility is present where "agency decisionmakers are biased or because the agency has already determined the issue." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019).  As is relevant here, the bar for establishing futility is set very high. *Lallave v. Martinez*, 609 F. Supp. 3d 164, 180 (E.D.N.Y. 2022).  A futility argument immediately fails where, as here, the argument is merely supported by conclusory or factually unsupported assertions. *Razzoli v. Strada*, No. 10-CV-4802 CBA, 2013 WL 837277 (E.D.N.Y. Mar. 6, 2013) (dismissing a pro se inmate's petition because, aside from "conclusory assertions," petitioner did not offer any explanation why his failure to exhaust should be excused); *Gissendanner v. Menifee*, 975 F. Supp. 249, 251 (W.D.N.Y. 1997) ("A mere conclusory allegation of futility is insufficient to excuse the petitioner from the requirement that he exhaust the remedies available to him through the BOP Administrative Remedy Procedure, 28 C.F.R. § 524.15.")  Petitioner contends the "administrative body is extremely bias," prejudicial, and incapable of granting relief because its decisions are "always pre-determined," among other

---

[3] That Petitioner failed to put forth sufficient evidence that his attempts to exhaust his remedies were impeded is buttressed by Petitioner's own exhibits showing that he received responses to each of the BP-10 appeals contained therein.  (Pet. Exs. at 27, 29, 31, 33, 35, 37, 39, 41.)

unsupported accusations. (Pet. at 5.; *see* Pet. at 4, 6.) But, Petitioner provides no evidence or support for any of these assertions. (*See generally* Pet.; Pet. Exs.) As such, the Court is not persuaded by Petitioner's futility argument, either.

Because Petitioner has not shown excusing his failure to exhaust administrative remedies is warranted, the Court lacks jurisdiction to hear his claims.[4] *Lallave*, 609 F. Supp. 3d 181.

## CONCLUSION

For the foregoing reasons, the petition is DENIED. The Clerk of the Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

Dated: Brooklyn, New York  
      September 30, 2025

/s/ LDH  
LASHANN DEARCY HALL  
United States District Judge

---

[4] The Court acknowledges that Petitioner's petition raises a constitutional question in that he challenges whether his disciplinary hearing and subsequent ruling comports with the Fifth Amendment's due process clause. However, the "presence of constitutional issues alone does not create an automatic exception to the exhaustion requirement." *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996) (citing *W.E.B. DuBois Clubs of Am. v. Clark*, 389 U.S. 309, 312 (1967) (per curiam). Further, the Court is not persuaded to waive the exhaustion requirement by the fact that a constitutional question is raised because Petitioner does not contend that the four step procedure under the ARP is incompatible with due process. (Pet. at 6.) Instead, his only arguments for excusal appear to be those that have been rejected herein for failing to have any factual or evidentiary support.